**GOVERT COPIER PAINTING, a Utah partnership, Plaintiff, Appellant and Cross-Appellee,**

v.

**Craig VAN LEEUWEN, Defendant, Appellee and Cross-Appellant.**

**No. 890538-CA.**

Court of Appeals of Utah.

Nov. 8, 1990.

[redacted]

Cass C. Butler (argued), Watkiss & Campbell, Salt Lake City, for plaintiff, appellant and cross-appellee.

Kendall S. Peterson (argued), Tibbals, Howell, Wilkins & Oritt, Salt Lake City, for defendant, appellee and cross-appellant.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

Appellant Govert Copier Painting ("Copier Painting") appeals from a summary judgment dismissing its suit to recover for painting the interior of appellee Craig Van Leeuwen's ("Van Leeuwen") home.

In the summer of 1985, Van Leeuwen and Fred Copier discussed the interior painting of a home Van Leeuwen was constructing for himself. After several conversations, Van Leeuwen entered into an oral agreement with Fred Copier to paint the home. Fred Copier purchased the materials and began painting on December 3, 1985.

Fred Copier ceased painting on February 14, 1986, before the interior painting was finished, because the house was not yet completed. Fred Copier and Van Leeuwen agreed that Fred Copier would leave materials so Van Leeuwen could complete the painting himself. Fred Copier delivered a bill to Van Leeuwen on February 14, 1986, and a dispute arose concerning the amount owed. It is unclear exactly when the painting of the home was completed. Fred Copier contends he saw subcontractors working at the home after July 1, 1986, and infers from that fact that the painting must have been completed after July 1, 1986.

On February 25, 1986, Fred Copier filed a notice of mechanics' lien under the name of Govert Copier Painting ("Copier Painting"), listing himself as "Managing partner for Govert Copier Painting." In the notice of lien, Fred Copier listed the date the last labor was performed and materials furnished as February 14, 1986.

Copier Painting purports to be a Utah partnership consisting of two partners, Govert Copier and his son, Fred Copier. The partnership is not registered to do business in the State of Utah, nor is the partnership licensed by the State of Utah as a painting contractor. Govert Copier has been a licensed painting contractor in Utah continuously since 1958. Fred Copier is not and has never been a licensed painting contractor.

On June 23, 1987, Copier Painting commenced this action, requesting (1) foreclosure of its mechanics' lien, (2) compensation on the oral contract, and (3) in the alternative, compensation under the theory of unjust enrichment. The trial court granted summary judgment on the mechanics' lien claim finding it untimely. The court later dismissed the remaining claims, finding that an unlicensed contractor is barred from suing for compensation by Utah Code Ann. § 58A-1a-13 (1986).

Copier Painting appeals, claiming the trial court erred in (1) its calculation of the one-year statute of limitations period under the Utah Mechanics' Lien Act; (2) barring the company's contract claim because Govert Copier was a duly licensed painting contractor; and (3) dismissing the unjust enrichment claim. Van Leeuwen also appeals the amount of attorney fees awarded by the trial court and requests attorney fees incurred on appeal. We affirm in part and reverse and remand in part.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). "When reviewing an appeal from summary judgment, we construe the facts and view the evidence in the light most favorable to the losing party." *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Assoc.*, 789 P.2d 52, 54 (Utah Ct.App.1990); *see also Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 666 (Utah Ct.App.1990). Thus, if the parties dispute a genuine issue of material fact, we must reverse a summa-

ry judgment and remand for a determination of that issue. *Parents Against Drunk Drivers,* 789 P.2d at 54; *see also Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987). We may also reappraise a trial court's legal conclusions as summary judgment is a matter of law, not fact. *Parents Against Drunk Drivers,* 789 P.2d at 54; *see also Atlas Corp.,* 737 P.2d at 229.

## STATUTORY BAR TO RECOVERY BY UNLICENSED CONTRACTOR

■ Copier Painting claims Fred Copier and his father, Govert Copier, have a painting partnership and because Govert Copier is a licensed painting contractor, Fred can perform work under his father's license. Copier Painting thus claims the district court erred in finding Utah Code Ann. § 58A–1a–13 (1986) was a bar to its suit to recover on its painting contract.[1] Van Leeuwen concedes only for purposes of Copier Painting's appeal of Van Leeuwen's successful summary judgment motion that Copier Painting is a partnership and was the contractor which performed the painting contract at issue. He does so because he claims this court can affirm the summary judgment, even conceding these disputed issues of fact, because the contractor, Copier Painting partnership, was unlicensed, the only person licensed being Govert Copier individually.

The dissent accepts the facts that a partnership exists with Fred and Govert Copier as partners and that this partnership was the painting contractor which performed the work on Van Leeuwen's home. Based on these facts the dissent would hold, as a matter of law, that the statutory bar preventing unlicensed contractors from recovering, § 58A–1a–13 (1986), does not apply. The dissent finds that since Fred Copier performed the work and claims to be a partner with his father, a licensed contractor, Fred is a licensed contractor not subject to the statutory bar. The dissent decides an issue that is simply not properly

before us on this appeal from the court's grant of summary judgment.

Van Leeuwen did not concede before the trial court that Copier Painting is *in fact* a partnership with Fred Copier as one of its partners. Rather, Van Leeuwen hotly contested these facts. On appeal, he cites facts from the record before the trial court to support the contrary conclusion: that Copier Painting was not registered to do business as a partnership; that he was never told of any partnership, but rather assumed he was dealing solely with Fred Copier; that he in fact understood Govert Copier had retired and was no longer involved with painting; that Fred Copier never held himself out as a member of a partnership or any other business entity. We disagree with the dissent that parties may not concede certain disputed factual issues merely to expedite the resolution of a legal issue and then re-assert these factual issues if the legal ruling on a motion for summary judgment is not in their favor.

Van Leeuwen's position before the trial court was that the painting contract was entered into and performed by Fred Copier and the attempt to use Govert Copier's individual license was an afterthought to avoid the statutory bar. The trial judge in his oral ruling granting Van Leeuwen's motion for summary judgment states "the court is of the opinion that the motion for summary judgment should be granted at this time. I think the records-affidavit support the defendant's proposition in regards to the fact that Fred Copier is not a partnership." The court continues "Fred Copier *himself* contracted with Van Leeuwen and he is not a licensed contractor and so he cannot sue under the statute."

■ We believe the dissent's contention that the trial court's denial of Van Leeuwen's earlier motion to dismiss on the grounds that Fred Copier, not Copier Painting, was the real party in interest establishes as the law of the case the fact that Copier Painting, not Fred Copier, was the contractor is incorrect. The denial of a

---

**1.** Copier Painting also argues on appeal that dismissal of its complaint violates the open courts provision in the Utah Constitution, Utah

Const. art. I, § 11 (1971). Since we reverse on other grounds, we do not reach this issue.

motion to dismiss with no findings or statement of grounds establishes no law of the case such that all facts which may have been relevant to the decision are afterwards undisputed. The dissent's conclusion that the denial of this motion to dismiss eliminates all the disputed issues of fact concerning who the contractor actually was is simply an inappropriate reaching out to support a desired result on appeal and to inappropriately restrict a trial court's actions on remand.

In conclusion, we believe the dissent misconstrues the record before us and thus erroneously concludes that the undisputed facts demonstrate that Copier Painting, a Utah partnership, was the contractor and "was 'properly licensed' and is therefore not barred by section 58A–1a–13."

To resolve this dispute, we analyze the regulatory scheme which bars unlicensed contractors from recovering.

Utah Code Ann. § 58A–1a–13 (1986) provides:

> No contractor may act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that he was a properly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.[2]

■ Under this statute, Copier Painting has the burden to prove it is a properly licensed contractor before it can sue for compensation. Utah Code Ann. § 58A–1a–13 (1986).

■ Copier Painting argues that the partnership complied with section 58A–1a–13 because its partner, Govert Copier, was licensed and he supervised the work of his partner and son, Fred Copier. Copier Painting claims that forfeiture of a valid claim for failure to obtain a contractor's license should not be mechanically applied. It cites several Utah Supreme Court cases which have refused to apply the common law rule of non-recovery developed under the previous statute, Utah Code Ann. § 58–23–1 (1967).[3] *See Loader v. Scott Constr. Co.,* 681 P.2d 1227, 1230 (Utah 1984) (non-recovery rule not imposed because the *defendant* was a licensed contractor so was not a member of the protected class, the unlicensed contractor fully performed the contract and defendant would be unfairly benefited by avoiding payment, and the unlicensed contractor's unlicensed status was the result of a good faith mistake); *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983) (because the unlicensed contractor's son was licensed and supervised the project, the plaintiff received the protection of the licensing statute); *Lignell v. Berg,* 593 P.2d 800, 805 (Utah 1979) (the unlicensed contractor inadvertently permitted his license to lapse which did not affect his competence; the owners did not rely on his competence; and he had supplied a performance bond; thus, the owners were protected); *Fillmore Prods. v. Western States Paving, Inc.,* 561 P.2d 687, 689 (Utah 1977) (a licensed contractor could not invoke the non-recovery rule because unlicensed contractor's work

---

2. Van Leeuwen claims that we must read this statute in conjunction with Utah Code Ann. § 58A–1a–1 (1986), which defines contractor as "any person, firm, partnership, corporation, association, or other organization, or any combination of them...."

3. Utah Code Ann. § 58–23–1 (1967) required a person to obtain a license before engaging in the business of contracting. The statute did not specifically bar unlicensed contractors from bringing actions on their contracts. To protect the public, the Utah Supreme Court fashioned a general rule prohibiting unlicensed contractors from recovering for services rendered under their contracts. *See Frank R. George v. Oren Ltd. & Assocs.,* 672 P.2d 732, 735 (Utah 1982);

*Fillmore Prods. v. Western States Paving, Inc.,* 561 P.2d 687, 689 (Utah 1977). In 1981, the Utah Legislature repealed the licensing statutes and replaced them, adding section 58A–1–26, which prohibited an unlicensed contractor from suing on the contract. In 1985, the legislature enacted Utah Code Ann. §§ 58A–1a–1 to –16 (1986) including an identical provision barring actions. *See* Utah Code Ann. § 58A–1a–13 (1986). This is the statute in effect when the parties in this case contracted and performed. Since that time, the legislature has repealed title 58A, and the provision barring actions by unlicensed contractors is now found at Utah Code Ann. § 58–55–17 (1989).

met all specifications of the general contract and the entire project was under the supervision of a licensed project engineer).

Van Leeuwen responds that the adoption of the statutory bar nullified all of the exceptions developed under the common law rule and that section 58A–1a–13 must be strictly applied.[4] Utah case law, however, is contrary to Van Leeuwen's position.

In *Pacific Chromalox Div. v. Irey,* 787 P.2d 1319 (Utah Ct.App.1990), this court interpreted a similar engineering licensing statute which barred unlicensed engineers from bringing actions. The court concluded that case law developed under the prior common law prohibition on recovery by unlicensed vendors was still relevant after adoption of the statutory bar. *Id.* at 1326. The court reasoned that the statutory prohibition to recovery simply adopted the prior common law non-recovery rule and thus the statutory prohibition should be read to implement the purpose of protecting the public while not becoming "an unwarranted shield for the avoidance of a just obligation." *Id.* at 1326.

The Utah Supreme Court dealt with the statute barring suits by unlicensed contractors in *Wilderness Bldg. Sys., Inc. v.*

*Chapman,* 699 P.2d 766 (Utah 1985). The supreme court did not directly hold that prior common law excusing non-compliance in certain circumstances was still relevant to the statutory prohibition, but by its treatment of the case suggested its applicability. The plaintiffs in *Wilderness* argued that two exceptions developed under the common law non-recovery rule should be applied to avoid the statutory bar. *Id.* at 768–69. In addition, the plaintiffs argued that an unlicensed contractor could recover under the theory of unjust enrichment. *Id.* at 768.[5] The court did not simply conclude that the contractor was barred by the statute as he was unlicensed, but rather proceeded to review the common law doctrines excusing strict compliance, finding that none applied under the facts presented on appeal. *Id.* at 768–69.[6]

We are persuaded that the adoption of section 58A–1a–13, which bars actions by unlicensed contractors, does not preclude the application of the previous common law exceptions to the general rule of non-recovery.

## EXCEPTIONS TO STATUTORY BAR

■ The dissent agrees with us that the prior common law exceptions are still

---

**4.** Van Leeuwen relies upon *Loader v. Scott Constr. Co.,* 681 P.2d 1227 (Utah 1984), to support this claim. However, the *Loader* court did not consider the issue of whether the common law exceptions to the non-recovery rule were still relevant under the statutory bar to actions by unlicensed contractors. The court merely found the case arose before the statute was adopted and thus applied the previous common law exceptions to the non-recovery rule. The court had no occasion to consider whether the result would be otherwise under the statutory scheme. *Wilderness Bldg. Sys., Inc. v. Chapman,* 699 P.2d 766, 768 (Utah 1985).

**5.** Copier Painting asserts these same arguments on appeal, arguing that the statutory bar should not apply because (1) Van Leeuwen knew Fred Copier was unlicensed; (2) Govert Copier, a licensed painting contractor, supervised the job; and (3) Van Leeuwen would be unjustly enriched.

**6.** The *Wilderness* plaintiffs first argued that an unlicensed contractor could recover from one otherwise protected in a manner consistent with the purposes of the licensing statute. *See Lignell v. Berg,* 593 P.2d 800 (Utah 1979). *Wilder-*

*ness Bldg. Sys., Inc. v. Chapman,* 699 P.2d 766, 768 (Utah 1985). They argued that defendant's expertise and knowledge protected defendants from harm. *Id.* The court did not discount this exception, but found the facts before it did not persuade the court of defendant's knowledge or expertise. *Id.*

Next, the *Wilderness* plaintiffs argued that an unlicensed contractor may recover under a theory of unjust enrichment from "one who knew or should have known at the time of contracting that the contractor was unlicensed." *Id.* The court again found the evidence before it insufficient to determine whether defendants knew or should have known plaintiffs were unlicensed. *Id.*

Finally, the *Wilderness* plaintiffs argued that an unlicensed contractor could recover if a licensed contractor supervised the work performed. *See Motivated Management Internat'l v. Finney,* 604 P.2d 467 (Utah 1979); *Kinkella v. Baugh,* 660 P.2d 233 (Utah 1983). *Wilderness Bldg. Sys., Inc. v. Chapman,* 699 P.2d 766, 768–69 (Utah 1985). The court noted, however, that absent a trial transcript, it would assume that the trial court's determination on that issue was correct. *Id.* at 769.

relevant to an analysis under section 58A–1a–13 of whether a contractor should be barred from recovering. The dissent then claims that Copier Painting, as a matter of law, falls within one of the prior common law exceptions to section 58A–1a–13, finding that Van Leeuwen was not within the class the statute was intended to protect because he himself was an unlicensed general contractor. Thus, in effect, the dissent would grant a motion for partial summary judgment in favor of Copier Painting which in fact was never *filed*, briefed or argued to the trial court. Reversing the decision of a trial court is appropriate if the court was in error. However, it is not appropriate to not only reverse the trial court's granting of summary judgment for one party on one legal issue, but then to sua sponte grant the opposing party summary judgment on a separate and unlitigated legal issue when no cross motion for summary judgment was before the district court.

■ The dissent adopts this extraordinary procedure because it claims the exception to the statutory bar it employs is grounded upon "the undisputed facts which were before the trial court." The "undisputed facts" the dissent relies upon are extracted from an affidavit filed in support of an earlier motion to dismiss filed by Van Leeuwen and an interrogatory answer buried in the record on appeal. Neither this affidavit nor the interrogatories were included in the materials supplied to the judge when he decided Van Leeuwen's Motion for Summary Judgment. We will not consider facts on appeal when there is no record the trial judge had access to those facts when deciding the motion at issue. *Conder v. A.L. Williams and Associates*, 739 P.2d 634, 636 (Utah Ct.App.1987); *Alford v. Utah League of Cities and Towns*, 791 P.2d 201, 206 n. 3 (Utah Ct.App.1990). Furthermore, the portions of the affidavit relied upon by the dissent do not clearly establish that Van Leeuwen was an unlicensed contractor. The dissent takes one sentence out of context to support its bold assertion that Van Leeuwen himself was acting as an unlicensed contractor in building his home: "Van Leeuwen and his brother were involved in constructing homes from 1983 to 1986." The remainder of the evidence properly before the court establishes all homes were constructed for and moved into by Van Leeuwen. Furthermore, there is nothing in the record to verify whether Van Leeuwen used licensed contractors to perform the work on his homes or whether he ever constructed more than one house in a year such that he was required to become a licensed contractor.

■ Whether the particular exception to the statutory bar adopted by the dissent applies must first be decided by the district court when it has the critical facts before it and has access to the properly focused arguments of counsel. We thus proceed to analyze this limited appeal of the propriety of the court's granting of Van Leeuwen's motion for summary judgment based upon the legal issues raised by the parties and the facts which were before the trial court and thus which are proper for our consideration on appeal.

■ In order to recover on its contract claim, Copier Painting must demonstrate that despite its failure to have a contractor's license, the purpose of the licensing statute was met—the protection of the public. The prior Utah common law exceptions all are grounded on this general requirement. As long as the defendant is otherwise protected there is no need for rigid insistence on the plaintiff's proper licensure. The Utah Supreme Court has allowed an unlicensed contractor to recover "from one who is otherwise protected from the harm the licensing requirements were designed to prevent," such as where the contracting party is himself a licensed contractor, *Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766, 768 (Utah 1985); *see also Lignell v. Berg*, 593 P.2d 800, 805 (Utah 1979), or where the work of the unlicensed contractor is supervised by a licensed contractor. *See Kinkella v. Baugh*, 660 P.2d 233, 236 (Utah 1983); *Motivated Management Internat'l v. Finney*, 604 P.2d 467, 468 (Utah 1979).

In determining whether the purposes of the licensing statute were met, Utah's courts have also considered the reason a contractor was unlicensed an important factor. In *Loader v. Scott Constr. Co.*, 681 P.2d 1227 (Utah 1984), the court dealt with an unlicensed contractor who mistakenly believed he could perform work under his former partner's license. The Utah Supreme Court found that this was not a "willful disregard of the licensing statute." *Id.* at 1229–30. The court concluded that the good faith of the contractor in believing he was operating under a license was "one factor [to] consider in determining the [nonrecovery] rule's application." *Id.* at 1230.

A majority of courts from other jurisdictions, with statutes similar to Utah's prohibiting actions by unlicensed contractors, have adopted a rule consistent with Utah's prior common law.[7]

Under the facts in the record, although disputed, Copier Painting claims it believed in good faith it could operate under the contractor's license of one of its partners; that Govert Copier, the licensed partner, supervised the work performed by Fred Copier; and that Copier Painting performed the contract and Van Leeuwen would be unfairly benefited by avoiding payment. Based upon these disputed facts,[8] we reverse and remand on the issue of denial of recovery on the contract claim as there are material issues of fact as to whether Van Leeuwen was adequately protected from the harms the licensing statute was meant to prevent despite the failure of Copier Painting to be licensed as a partnership.

## QUANTUM MERUIT

Copier Painting on appeal also claims that even if it cannot recover on its contract claim, it should be allowed to recover in *quantum meruit*. We do not reach this issue as we have reversed for a determination of Copier Painting's right to recover on its contract claim. We note, however, that it is doubtful that a Utah contractor, barred from bringing suit under section 58A–1a–13, can still, under appropriate circumstances, recover in *quantum meruit*.[9]

7. See *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489–90 (9th Cir.), *cert. denied*, 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976) (an unlicensed owner entered into a partnership with a licensed managing contractor which afforded the protection of a Nevada statute); *Gross v. Bayshore Land Co.*, 710 P.2d 1007, 1013 (Alaska 1985) (contractor may avoid statutory bar if in substantial compliance with registration requirements "that afford public same protection that strict compliance would offer"); *Desert Springs Mobile Home Ranches, Inc. v. John H. Wood Constr. Co.*, 15 Ariz.App. 193, 487 P.2d 414, 416–17 (1971) (under statutory bar similar to Utah's, a construction company could still recover where the responsible party has a license and oversees the project); *Asdourian v. Araj*, 38 Cal.3d 276, 696 P.2d 95, 99–101, 211 Cal.Rptr. 703, 707–709 (1985) (substantial compliance avoids harsh consequences of denying access to the courts and test is whether the substantial compliance satisfies the policy of the statute); *Latipac, Inc. v. Superior Court*, 64 Cal.2d 278, 411 P.2d 564, 567, 49 Cal.Rptr. 676, 679 (1966) (en banc) (substantial compliance is sufficient where it satisfies the policy of the statute); *Dunkelberger v. Baker*, 12 Wash.App. 917, 533 P.2d 433, 436 (1975) (contractor may be allowed to prosecute a claim for compensation if he/she substantially complied with the registration statute, which means fulfilling the policy or purpose of the statute). *But see Bernard F. Hoste, Inc. v. Kortz*, 117 Mich.App. 448, 324 N.W.2d 46, 47 (1982) (per curiam) (fact that individual held contractor's license did not allow the individual's unlicensed corporation to recover because if a corporation could recover through a licensed owner, there would be no incentive for a corporation to obtain a license); *Nickels v. Walker*, 74 N.M. 545, 395 P.2d 679, 682 (1964) (partnership could not recover even though one partner was licensed and the partner had relied in good faith on advice of the license board because recovery was contrary to rules of the licensing board concerning change of legal entity).

8. Other disputed facts include who the contractor on the painting job was, whether Govert Copier, who held the license, supervised his son, Fred Copier, who performed the work; whether Van Leeuwen knew he was dealing with the partnership and not Fred Copier personally; and whether Van Leeuwen knew that Fred Copier or the partnership were not licensed and nevertheless chose to accept their services.

9. Utah's appellate courts have not uniformly addressed the issue of *quantum meruit* in the unlicensed contractor area. In *Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766 (Utah 1985), the Utah Supreme Court did not reach the merits of the issue of unjust enrichment because it found there was insufficient evidence that "defendant either knew or should have known that

In addition, we do not reach the issue of the proper measure of recovery if Copier Painting is allowed to recover on its contract claim.[10]

## TIMELINESS UNDER UTAH MECHANICS' LIEN STATUTE

Copier Painting also claims the trial court erred in finding the one-year limitation on actions to foreclose mechanics' liens barred its mechanics' lien action. Copier Painting contends that even though it performed its last work on its contract with the owner on February 14, 1986, it furnished materials to Van Leeuwen that were not used until after July 1, 1986.

Thus, Copier Painting argues that the filing of this action on June 23, 1987, was within the one-year statutory period.

Utah's mechanics' lien statute, Utah Code Ann. § 38-1-11 (1988), provides, in pertinent part: "Actions to enforce the liens herein provided for must be begun within twelve months after the completion of the original contract,[11] or the suspension of work thereunder for a period of thirty days." The burden of proof is on Copier Painting to prove that it is entitled to the lien and has complied with the statute. *See Martindale v. Adams*, 777 P.2d 514, 516 (Utah Ct.App.1989); *Hathaway v. United Tintic Mines Co.*, 42 Utah 520, 132 P. 388 (1913).

plaintiffs were unlicensed." *Id.* at 768. However, Justice Stewart's concurring opinion addressed whether Utah Code Ann. § 58A-1-26 (1983), the predecessor to section 58A-1a-13 at issue here, would bar an action in *quantum meruit*. He stated: "I do not believe that the door to equity has been closed by that provision to the extent that an unlicensed contractor should not be allowed to recover in quantum meruit for the fair value of what the defendants received." *Wilderness*, 699 P.2d at 769 (Stewart, J., concurring in the result).

In another licensing area, the Utah Supreme Court held recovery in *quantum meruit* inappropriate. In *Mosley v. Johnson*, 22 Utah 2d 348, 453 P.2d 149 (1969), the court addressed the issue of whether an unlicensed well-driller could recover either under the contract or under *quantum meruit*. While the licensing statute did not expressly bar actions by unlicensed well-drillers, the court applied the general common law rule of non-recovery to this area as well, using cases from the unlicensed contractor area. *Id.* 453 P.2d at 150. The court concluded:

> It is obvious that the statute requiring well drillers to secure and keep an annual permit is designed for the protection of the people of this State, and that one who drills a well in Utah without first securing an annual permit cannot recover in the courts of this State for the work done, either on a contract or on a theory of quantum meruit.

*Id.* at 152.

Other jurisdictions with similar statutes barring actions by unlicensed contractors have not allowed equitable actions in *quantum meruit*. *See Love v. Double "AA" Constructors, Inc.*, 117 Ariz. 41, 570 P.2d 812, 817 (Ct.App.1977) ("Even though some forfeiture may occur, the court has no equitable discretion to ignore this statute and allow an *unlicensed* contractor to recover on a construction contract otherwise valid.") (emphasis in original). *Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 739 P.2d 968, 971 (1987) ("We will not recognize an equitable defense of

unjust enrichment because the Legislature in [the statute] necessarily authorized the unjust enrichment of the recipients of work performed by unlicensed contractors."); *Roelle v. Griffin*, 59 Or.App. 434, 651 P.2d 147, 148-50 (1982) (The trial court ruled that while the statute prohibited the lien, it was unconstitutional and the partnership could recover for the "straight value of services rendered." The Oregon Court of Appeals reversed, finding the statute constitutional and ordering the trial court to dismiss the action, at least implying that recovery in *quantum meruit* was inappropriate.).

10. *See, e.g., Kirkendall v. Heckinger*, 105 Mich. App. 621, 307 N.W.2d 699, 702-03 (1981) (The policy underlying the licensing act was not violated where plaintiffs were aware the defendant was unlicensed and plaintiff was not inexperienced in the building trade. The court allowed recovery for the value of the improvements and the defendant's labor.); *Day v. West Coast Holdings, Inc.*, 101 Nev. 260, 699 P.2d 1067, 1071 (1985) (per curiam) (contractor without specialty license at time of contracting could still recover on the contract where plaintiff knew defendant was unlicensed and voluntarily entered into the contract and defendant obtained license after the work was performed); *Udall Constr. Co. v. Elliott*, 18 Wash.App. 850, 573 P.2d 809, 811 (1977) (unlicensed contractor who substantially complied with the licensing statute could recover on the contract); *Murphy v. Campbell Inv. Co.*, 79 Wash.2d 417, 486 P.2d 1080, 1083-84 (1971) (en banc) (unlicensed contractor who substantially complied with the licensing statute could recover in *quantum meruit*).

11. It is important to note that Copier Painting's alleged contract was directly with the owner, Van Leeuwen. Copier Painting was thus a primary contractor and not a subcontractor as is often the situation where painting work is performed.

The Utah Supreme Court has held that when a contractor finishes his or her work on a job, the statutory period begins to run. In *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289 (Utah 1986) (per curiam), the Utah Supreme Court stated: "The time for enforcing mechanics' liens set out in section 38–1–11 ... limits a lienor's rights to twelve months after *his work* is completed. At that point, both his rights and his remedies under the statute are extinguished." *Id.* at 292 (emphasis added). *See also Roberts v. Hansen*, 25 Utah 2d 190, 479 P.2d 345, 347 (1971) (Utah Supreme Court found that the date a contractor stops working is the determinative date for statute of limitations purposes).

Copier Painting relies on cases which hold that the statutory period for a mechanics' lien foreclosure action may be extended if the contractor performs non-trivial work or supplies materials after the majority of the contract is performed. *See Tortorica v. Thomas*, 16 Utah 2d 175, 397 P.2d 984, 986 (1965); *Wilcox v. Cloward*, 88 Utah 503, 56 P.2d 1, 6–7 (1936). These cases are factually distinguishable in that Copier Painting did not return to complete the interior painting; rather, Van Leeuwen or other laborers finished the painting.

In this case, Copier Painting stopped working on the house on February 14, 1986, and tendered Van Leeuwen a bill for work. Copier Painting had no plan to return to finish the job because Van Leeuwen and Fred Copier had agreed that Van Leeuwen would finish the job. At that point, Copier Painting's work was completed. Significantly the notice of lien lists February 14, 1986, as the date the last work was performed and materials furnished. Thus, Copier Painting had completed the performance on its primary contract on February 14, 1986, and the statutory period began to run on that date. Accordingly, Copier Painting's filing of this action on June 23, 1987, was untimely under section 38–1–11 as it was not filed within twelve months

of the completion of the original contract. *See* note 11, *supra*.

## VAN LEEUWEN'S CROSS–APPEAL ON ATTORNEY FEES

██ Van Leeuwen argues that the trial court abused its discretion when the court, in awarding Van Leeuwen its attorney fees as the prevailing party on the mechanics' lien issue, reduced its requested attorney fees of $1,387.50 to a nominal $100.[12]

██ In Utah, attorney fees may be awarded only if authorized by statute or provided for by contract. *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). In this case, Van Leeuwen claimed attorney fees under Utah Code Ann. § 38–1–18 (1988), which provides that "[i]n any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action." *See also AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 292–93 (Utah 1986) (per curiam).

██ As a general rule, the trial court has discretion to determine the reasonable attorney fees to be awarded and "we will not overturn the award absent an abuse of discretion." *Regional Sales Agency, Inc. v. Reichert*, 784 P.2d 1210, 1215 (Utah Ct. App.1989); *see also Dixie State Bank*, 764 P.2d at 988.

██ "An award of attorney fees must be based on evidence in the record which supports the award. However, a trial court is not compelled to accept the self-serving testimony of a party requesting attorney fees even if there is no opposing testimony." *Regional Sales*, 784 P.2d at 1215 (citation omitted). A court, when determining what is a reasonable fee, may reduce the amount requested, *id.*, after considering factors such as:

the difficulty of the litigation, the efficiency of the attorneys in presenting the

---

12. Copier Painting filed a motion to strike Van Leeuwen's cross-appeal because it claimed there was no notice of appeal filed. However, Van Leeuwen's notice of cross-appeal was filed with the Utah Supreme Court on August 11, 1989, before this case was transferred to our court. Therefore, we address the cross-appeal on the merits.

case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985); *see also Dixie State Bank,* 764 P.2d at 989.

"We have consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award." *Regional Sales,* 784 P.2d at 1215. *See also Cabrera,* 694 P.2d at 624. We have held that unless the court offers an explanation for the reduction of the attorney fees requested in a case where there is adequate and uncontroverted evidence in the record to support the fees, it abuses its discretion. *See Regional Sales,* 784 P.2d at 1216; *Martindale v. Adams,* 777 P.2d 514, 518 (Utah Ct.App.1989). *See also Dixie State Bank,* 764 P.2d at 987–91.

In this case, the trial court reduced the award from the $1,387.50 requested to $100 and stated:

what the court is going to do is grant nominal attorney fees of $100.00 on that. I think it is based on the merits of this case and the fact that defendant has received considerable amount of services for practically nothing, I guess, except attorney[']s fees.

The trial court, while it explained its reason for reducing the attorney fee award,[13] did not utilize the factors established by appellate courts as relevant to a reduction in fees. We therefore reverse and remand for the determination of reasonable attorney fees to be awarded to Van Leeuwen as the prevailing party on the mechanics' lien issue. In addition, Van

Leeuwen is entitled to his attorney fees on appeal insofar as attributable to the mechanics' lien issue. *See Nu–Trend Elec., Inc. v. Deseret Fed. Sav. & Loan Assoc.,* 786 P.2d 1369, 1372 (Utah Ct.App.1990). *See also Mountain States Broadcasting Co. v. Neale,* 776 P.2d 643 (Utah Ct.App. 1989). Thus, the trial court should also determine reasonable attorney fees for services rendered at the trial level and on appeal on the mechanics' lien issue.[14]

## CONCLUSION

We hold that a contractor is not barred from bringing suit by Utah Code Ann. § 58A–1a–13 (1988) if the contractor can establish that, despite its failure to obtain a license, the purpose of the licensing statute—protection of the public—was satisfied. Thus, we reverse the trial court's summary judgment and remand for trial on Copier Painting's contract claim consistent with the principles set out in this opinion.

We affirm the trial court's conclusion that Copier Painting's action to enforce its mechanics' lien is untimely as it was commenced more than twelve months after Copier Painting completed work on the project.

Further, we find that the trial court abused its discretion when it awarded Van Leeuwen a nominal sum of $100 for attorney fees under Utah Code Ann. § 38–1–18 (1988). We remand for the trial court to determine a reasonable attorney fee using the factors enunciated by Utah appellate courts. In addition, Van Leeuwen is entitled to attorney fees incurred on appeal on the mechanics' lien issue and the trial court is directed to determine a reasonable attorney fee.

ORME, J., concurs.

---

13. It is noteworthy that the trial court's stated explanation may not hold true. If, on remand, plaintiff prevails in establishing that despite the partnership's failure to obtain a license that Van Leeuwen was nevertheless adequately protected, it will likely recover on its contract claim and Van Leeuwen will not have received services "for practically nothing."

14. Van Leeuwen argues that he should receive costs and attorney fees on appeal because Copier Painting brought a frivolous suit in violation of Rule 33(a) of the Rules of the Utah Court of Appeals and that Copier Painting's counsel violated Rule 40 of the Rules of the Utah Court of Appeals. This appeal was clearly not frivolous as it was successful on the major issue presented.

BENCH, Judge (concurring in part and dissenting in part):

I fully concur in the majority's treatment of the mechanics' lien issues. I respectfully dissent, however, to the court's treatment of Utah Code Ann. § 58A–1a–13 (1986). I believe that Copier Painting was "properly licensed" and is therefore not barred by section 58A–1a–13. In the alternative, assuming that Copier Painting was not properly licensed, I believe that this case falls within one of the common law exceptions to section 58A–1a–13 because Van Leeuwen was not a member of the class the section was intended to protect. Since these conclusions are based upon undisputed facts that were before the trial court, I believe this court should hold that Copier Painting was not barred from bringing suit by section 58A–1a–13 rather than remand the issue to the trial court.

## THE PROPER ISSUE FOR REVIEW

The majority believes the questions of whether Van Leeuwen contracted with Copier Painting, and whether Copier Painting was, in fact, a partnership, are still unresolved. The majority admits that Van Leeuwen has conceded these facts for purposes of this appeal, but concludes that somehow Van Leeuwen may still assert that they are not true. I respectfully disagree. The reality is that Van Leeuwen had no choice but to concede.

Van Leeuwen's concession that Copier Painting was the party with which he contracted is, in fact, the law of the case. Prior to his motion for summary judgment, Van Leeuwen moved for dismissal pursuant to Rule 17 of the Utah Rules of Civil Procedure, alleging that Copier Painting was a stranger to the contract to paint the house and therefore was not the "real party in interest." In support of his motion, Van Leeuwen laid out the facts which he believed proved that Fred Copier was acting individually and not as a partner or employee of Copier Painting. The trial

court denied the motion, thereby ruling that Copier Painting was the contractor for the work performed. The motion for summary judgment was then granted based on Copier Painting not being properly licensed; Fred Copier's status being rendered irrelevant by the trial court's earlier ruling.

The majority ignores the trial court's ruling on this key issue. We must give the law of the case the same recognition that we demand of the trial court. "Although a trial court is not inexorably bound by its own precedents, prior relevant rulings made in the same case are generally to be followed." *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 45 (Utah Ct.App.1988) (quoting *People ex. rel. Gallagher v. District Court*, 666 P.2d 550, 553 (Colo.1983)). Since Van Leeuwen has not challenged the trial court's denial of his motion to dismiss, we are obligated to treat it as the law of the case on appeal. *Tracy v. University of Utah Hosp.*, 619 P.2d 340, 342 (Utah 1980).

The majority also ignores the express terms of the trial court's order granting summary judgment. The order states that the motion was granted because "Copier Painting, *a Utah partnership*, did not have a painting contractor's license," (emphasis added) and was therefore barred from seeking recovery by section 58A–1a–13. The majority places great emphasis on the trial court's oral statements that Fred Copier was not a partner and that Fred Copier contracted individually with Van Leeuwen.[1] Such oral statements, however, are insufficient to alter a prior ruling. If a trial court is "without power to alter its prior ruling upon the subsequent filing of what is, in essence, the same motion," *Tracy*, 619 P.2d at 342, then it certainly may not alter its prior ruling sua sponte.

Having established by the law of the case that Van Leeuwen contracted with Copier Painting, and not Fred Copier as an individual, the only question remaining in

1. If the intended holding of the trial court was that Fred Copier was not a partner and that Fred Copier contracted individually with Van Leeuwen, then the trial court should have grant-

ed Van Leeuwen's motion for dismissal. Van Leeuwen, however, has not challenged the trial court's ruling on that issue and is therefore bound by the ruling.

order to frame the proper issue on appeal is whether Copier Painting was a partnership or a sole proprietorship. Van Leeuwen has in fact conceded that Copier Painting was a partnership because otherwise the summary judgment could not stand. Copier Painting's legal status was a material fact in determining whether Copier Painting was properly licensed. If Copier Painting was a sole proprietorship, then it was properly licensed, and the bar clearly would not apply. If it was a partnership, however, then the argument might be made that the bar should apply because Copier Painting was not formally licensed as a partnership. Since summary judgment could not be granted without first deciding this issue, Van Leeuwen had to concede on appeal that Copier Painting was a partnership in order to preserve the summary judgment.

Van Leeuwen may not concede a fact in order to preserve the summary judgment, and still claim that the fact is disputed. He is bound by his concession. Since Van Leeuwen conceded that Copier Painting was a Utah partnership, we must answer the question whether Copier Painting, *as a Utah partnership*, was barred from seeking recovery. Not only is that issue properly before us, it is the only issue before us.[2]

### "PROPERLY LICENSED CONTRACTOR"

Copier Painting maintains that it was properly licensed by virtue of the license held by one of its partners individually. Before addressing the application of section 58A–1a–13, we should therefore address this threshold question of whether or not Copier Painting was "a properly licensed contractor." I believe the trial court's conclusion on this issue was legally incorrect.

Van Leeuwen argues that Copier Painting was not "properly licensed" because it was a partnership rather than a sole proprietorship as indicated on the license held by Govert Copier. Under the licensing provisions in effect at the time, such a distinction amounted to nothing more than a difference in the name on the license. The statute was silent as to whether Copier Painting, which was properly licensed as a sole proprietorship, was required to modify its license when Fred Copier became a partner.

In order to determine whether the partnership was properly licensed, we must review the licensing requirements for any distinctions between the licensing of a partnership and the licensing of a sole proprietorship. There were no such statutory distinctions at the time the contract was entered into and performed.[3] The statutory qualifications for a license were exactly the same.[4] The application process was also the same. Once obtained, a license could be renewed in the same manner. *See* Utah Code Ann. § 58A–1a–9 (1986). There was no statutory requirement that if a sole proprietorship changed to a partnership it

---

2. The majority indicates that I find that Fred Copier was a licensed contractor. This, however, is a mischaracterization of my dissent since I clearly address only whether the business entity, Copier Painting, is properly licensed.

3. When the contractor licensing provisions were amended in 1989, after the period in question, a new provision was added, section 58–55–7, which distinguished between issuing a contractor's license in the name of an individual and issuing a license in the name of a business entity. The new provision requires that a business entity other than a sole proprietorship have a "qualifier" who takes the test on behalf of the business entity.

4. Utah Code Ann. § 58A–1a–8 (1986) provided:

(1) Each applicant for a contractor's license shall:

    (a) submit to the division a verified application made on a form prescribed by the division specifying the classification of license which is being applied for;

    (b) demonstrate a degree of experience, financial responsibility, and general knowledge of the building, safety, and health laws of the state, and the principles of the contracting business reasonably necessary for the safety and protection of the public; and

    (c) deliver the proper fee determined by the department under Subsection 63–38–3(2).

(2) The director may refuse to issue a license to any applicant who fails to meet the requirements and qualifications of this chapter and the rules of the division.

must obtain a new license, nor was there a requirement that the new partnership report any such change. *Compare Nickels v. Walker*, 74 N.M. 545, 395 P.2d 679, 682 (1964) (failure by a licensed contractor to report his formation of a new partnership barred the partnership's cause of action even though he was still licensed individually because the statute expressly required new partnerships to obtain a license). The reasonable expectation that Copier Painting could continue to operate under the same license after Govert Copier made his son a partner simply was not dispelled by any express provision of the statute.

"Issuance of a license to [Copier Painting as a partnership] in [its] own name would not have provided defendant with any greater assurances that he was dealing with an experienced and competent contractor," *Asdourian v. Araj*, 38 Cal.3d 276, 211 Cal.Rptr. 703, 709, 696 P.2d 95, 101 (1985), than those assurances he received by Copier Painting being licensed as a sole proprietorship. In other words, since one partner had the requisite experience and expertise to be licensed, the partnership, which includes the licensed partner, also had the requisite experience and expertise.[5] *Cf. Pacific Chromalox Div. v. Irey*, 787 P.2d 1319, 1327 n. 2 (Utah Ct.App.1990) (the risk of harm resulting from an engineer being unlicensed was minimized by the unlicensed engineer employing licensed engineers); *Latipac, Inc. v. Superior Court*, 64 Cal.2d 278, 49 Cal.Rptr. 676, 679, 411 P.2d 564, 567 (1966) (en banc) ("The fitness of a corporation to enjoy a contractor's license lies in the competence and experience of the individual who qualifies on its behalf.").

There being no statutory requirement that a newly formed partnership obtain a new license in its own name, I would conclude that Copier Painting, a Utah partnership, was "properly licensed" as a matter of law.

## EXCEPTIONS TO STATUTORY BAR

In the alternative, assuming that Copier Painting, a Utah partnership, was not properly licensed, or even assuming that Fred Copier acted individually, I would still not apply section 58A–1a–13 to this contract because Van Leeuwen is outside the class this provision is intended to protect, the lay public.

Van Leeuwen was not an unsophisticated, home-buying member of the public; he was himself an experienced contractor. In his affidavit filed in support of his motion to dismiss, Van Leeuwen stated that he and his brother were "involved in constructing homes" from 1983 to 1986.[6] I believe the only reasonable interpretation of this statement is that Van Leeuwen was himself a contractor when he entered into the painting contract with Copier Painting in 1985. Van Leeuwen further admitted in his response to Copier Painting's first set of interrogatories that he was the general contractor on the home and that he was not licensed. There being no indication by Van Leeuwen to the contrary, there was no factual dispute before the trial court that

---

**5.** Inasmuch as a partnership may, as a matter of law, be considered to have the same knowledge as its partners, *see* Utah Code Ann. § 48–1–9 (1989), the public may likewise, as a matter of law, be deemed adequately protected when at least one of the partners has a license. *See, e.g., Desert Springs Mobile Home Ranches, Inc. v. John H. Wood Constr. Co.*, 15 Ariz.App. 193, 487 P.2d 414, 417 (1971) ("qualifying partner in whose name a valid contractor's license stood at time the cause of action accrued should be considered as one with the company").

**6.** The majority criticizes my use of Van Leeuwen's affidavit from the prior motion as a basis for concluding that Van Leeuwen was a contractor because the affidavit was not "included in the materials supplied to the judge when he

decided Van Leeuwen's Motion for Summary Judgment." The majority continues, "[w]e will not consider facts on appeal when there is no record the trial judge had access to those facts when deciding the motion at issue." I agree with the principle stated by the majority but find that in the present case the trial court "had access to those facts." Not only was the affidavit a part of the record, the issue of whether Van Leeuwen was a contractor was expressly raised in Copier Painting's memorandum in opposition to Van Leeuwen's motion for summary judgment. I therefore believe that the fact that Van Leeuwen was himself a contractor was undisputed and properly before the trial court at the time it granted summary judgment.

Van Leeuwen was an unlicensed contractor.

An experienced contractor is not entitled to the protection of section 58A–1a–13 because he is not a member of the lay public, the class the legislature intended to protect. This is one of the established common law exceptions to the general bar. *See, e.g., Loader v. Scott Constr. Corp.,* 681 P.2d 1227 (Utah 1984).

> The general rule is not applied unconditionally, but only under circumstances in which the "party from whom the contractor seeks to recover is in the class the legislature intended to protect." The purpose behind taking this approach is to avoid unreasonable penalties and forfeitures which go, not to the state, but to repudiated defendants. Laws intended for protecting the public are not intended to become "an unwarranted shield for the avoidance of a just obligation," and should not allow a "defendant to take the benefit of an unlicensed plaintiff's labor and refuse to pay for it."

*Pacific Chromalox,* 787 P.2d at 1326 (citations omitted).

The legislature did not intend to protect contractors because a contractor is "presumed to possess expertise in the contracting business which would enable him to protect himself." *Id.* at 1326 (citing *Loader,* 681 P.2d at 1229). *See also Lignell v. Berg,* 593 P.2d 800, 805 (Utah 1979). Since Van Leeuwen was himself an experienced contractor, section 58A–1a–13 does not apply. It would be grossly inequitable and unwarranted to permit Van Leeuwen to use this section as a "shield for the avoidance of a just obligation." *Fillmore Prods. v. Western States Paving, Inc.,* 561 P.2d 687, 690 (Utah 1977) (quoting *Matchett v. Gould,* 131 Cal.App.2d 821, 281 P.2d 524 (1955)). No public policy would be served by permitting one unlicensed contractor to invoke section 58A–1a–13 as a shield against another unlicensed contractor. Section 58A–1a–13 simply was not intended to protect unlicensed contractors from each other.

In *Loader,* 681 P.2d at 1227, the Utah Supreme Court found in favor of the unlicensed contractor because (1) the defendant, a licensed contractor, was not a member of the class the statute intended to protect, (2) the unlicensed contractor fully performed the contract and the defendant would be unfairly benefited by avoiding payment, and (3) the contractor's unlicensed status was the result of a good faith mistake. Likewise, Copier Painting should not be barred from bringing suit against Van Leeuwen for the following reasons: (1) Van Leeuwen is not a member of the class intended to be protected by the legislature because he was himself an unlicensed contractor; (2) Van Leeuwen would be unfairly benefited by avoiding payment for the painting services performed; and (3) assuming Copier Painting was not "properly licensed," such technical deficiency was because of a good faith mistake in interpreting an ambiguous statute.

The majority lists several disputed facts which it views as material to a determination whether section 58A–1a–13 should be applied to Copier Painting. Without belaboring the point by referring to each fact listed, I believe that such facts have nothing to do with whether Van Leeuwen was a member of the class intended to be protected. The disputed facts listed only become relevant if Van Leeuwen was a member of the protected class. Inasmuch as I believe that Van Leeuwen was not entitled to such protection, I view these facts as immaterial.[7]

I therefore believe it unnecessary to remand the issue of whether Copier Painting

---

7. I believe that the record before us is clear that Van Leeuwen was a contractor and therefore not entitled to the protection of the licensing provisions. Inasmuch as the majority does not share this view, however, the first issue to be addressed on remand is whether Van Leeuwen was a contractor. That is not to say that the other common law exceptions could not be considered, only that they may not be needed. If it is determined on remand that Van Leeuwen was entitled to such protection, the other common law exceptions may then be considered.

is barred under section 58A–1a–13. The summary judgment should be reversed and the contract claims should be set for trial.[8]

8. The majority opinion mischaracterizes this result as the granting of a motion for summary judgment which was never filed. Remanding for a trial on the merits without any further discussion regarding section 58A–1a–13 is clearly not the granting of a motion for summary judgment to Copier Painting. When we reverse a summary judgment on appeal, it is either because 1) there were material questions of fact that were disputed, or 2) given the undisputed facts, the moving party was not entitled to judgment as a matter of law. *See* Utah R.Civ.P. 56(c).

The majority reverses because it finds that there were disputed facts material to a determination of whether section 58A–1a–13 should be applied. I, on the other hand, believe that the material facts are undisputed and that Van Leeuwen is not entitled to summary judgment as a matter of law. By reversing the summary judgment as a matter of law, we simply return the parties to the same status that existed prior to the granting of the summary judgment. The only difference is that the legal question is now resolved. This, however, is the risk that a party takes when it seeks summary judgment.