**FOR–SHOR COMPANY, Plaintiff,**

v.

**David W. EARLY, Trustee; Savage Construction Company; Statewide Construction; and Tim Savage, Defendants and Appellees.**

**Labor Services, Inc., Intervenor and Appellant.**

**No. 910427–CA.**

Court of Appeals of Utah.

March 25, 1992.

Blake D. Miller and Marji Hanson, Salt Lake City, for intervenor and appellant.

Allan M. Metos, Salt Lake City, for defendants and appellees.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Labor Services, Inc. (LSI) appeals from the trial court's denial of its motion to intervene. On appeal, LSI claims the trial court erred in ruling that its action to foreclose its mechanic's lien was not filed within the period set forth in Utah Code Ann. § 38–1–11 (1988). We hold that the action to foreclose the mechanic's lien was timely commenced. Accordingly, we reverse and remand for further proceedings.

## FACTS

Appellee David Early engaged Savage Construction as the general contractor for construction on Early's residence. The contract stated that the property on which the residence was located was "lot # 12, Olympus Park Subdivision, Parkview Drive, Salt Lake City, Utah." Savage then entered into a subcontract with LSI whereby LSI agreed to provide labor for construction on the residence. The subcontract referred to the street address of the property but not to the legal description of the property. LSI provided labor on the project from July through October of 1989. On November 7, 1989, Savage removed its equipment and personnel from the property due to Early's failure to make payments to Savage.

LSI recorded its notice of lien on December 14, 1989. The notice of lien stated that the owner of the property was David Early, that the reasonable value of the services provided by LSI was $5,996.67, and that the property to be charged was located at 3941 South Parkview Drive (3915 East), Salt Lake City, Utah, more particularly described as "Lot 12 Olympus Park subdivision." On February 20, 1990, For–Shor Company, another subcontractor, commenced this action to foreclose its own mechanic's lien on the property. LSI filed a motion to intervene on October 23, 1990. Early filed an objection and motion to dismiss on the ground that LSI's action to foreclose its mechanic's lien was time-barred. The trial court denied the motion to intervene on the grounds that LSI failed to file its action on the lien within twelve months after completion of its subcontract, as ostensibly required by Utah Code Ann. § 38–1–11 (1988), and that LSI's notice of lien did not contain a sufficient legal description of the property as required by Utah Code Ann. § 38–1–7 (Supp.1991).

## TIMELINESS

■ On appeal, LSI argues the trial court erred in denying its motion to intervene. LSI claims the "statute of limitation"[1] contained in Utah Code Ann. § 38–1–11 did not run until twelve months after suspension of work on the contract between the general contractor and the owner. Accordingly, LSI claims its action to foreclose its mechanic's lien on October 23, 1990 was timely filed since it was filed within twelve months after Savage suspended work on November 7, 1989, even though the action was filed more than twelve months after LSI suspended its own work.

The purpose of the mechanics' lien act is to protect laborers and materialmen who have increased the value of the property of another by their materials or labor. *Projects Unlimited v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990).

But the act's benefits are available only to those who comply with its requirements. Utah Code Ann. § 38–1–11 (1988) provides that "[a]ctions to enforce the liens herein provided for must be begun within twelve months after the completion of the original contract, or the suspension of work thereunder for a period of thirty days." Further, Utah Code Ann. § 38–1–2 (1988) states that "[w]hoever shall do work or furnish materials by contract, express or implied, with the owner, as in this chapter provided, shall be deemed an original contractor, and all other persons doing work or furnishing materials shall be deemed subcontractors."

■ In several cases, the Utah Supreme Court has addressed the distinction between an original contractor and a subcontractor for purposes of section 38–1–2. In *Holbrook v. Webster's Inc.*, 7 Utah 2d 148, 320 P.2d 661 (1958), the Utah Supreme Court indicated that only if a lien claimant enters into a contract directly with the owner is the claimant deemed an "original contractor." 320 P.2d at 662. Similarly, in *Smith Brothers Lumber Co. v. Johnson*, 19 Utah 2d 107, 426 P.2d 811 (1967), the Court held that Smith Brothers was an "original contractor" within the meaning of section 38–1–2 because the owner contracted directly with Smith for materials. 426 P.2d at 811 & n. 1. Finally, in *Roberts v. Hansen*, 25 Utah 2d 190, 479 P.2d 345 (1971), the Court held that plaintiff was an original contractor rather than a subcontractor where he entered into a contract directly with the equitable owner of the property. 479 P.2d at 346–47. Thus, under section 38–1–2, and the case law interpreting that provision, a lien claimant will be characterized an "original contractor," regardless of the function he performed in the particular construction project, so long as his contract was with the property owner. *See also* note 2, *infra*. Given this usage, it would seem apparent that "original contract," as the term is used in section 38–1–11, is the contract between the owner

---

1. Although the parties refer to section 38–1–11 as a statute of limitation, section 38–1–11 is not, strictly speaking, a statute of limitation. *See*

*Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 751 n. 13 (Utah 1990).

and the "original contractor," as that term is used in section 38–1–2.

Early claims, however, that "original contract," as used in section 38–1–11, and in the context of determining when a particular lienor's twelve-month period commences, can also be interpreted to mean the contract between a subcontractor and the general contractor. As support for this proposition, LSI cites language in *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289 (Utah 1986) (per curiam), which states that "[t]he time for enforcing mechanics' liens set out in section 38–1–11 ... limits a lienor's rights to twelve months after *his* work is complete. At that point, both his rights and his remedies under the statute are extinguished." *Id.* at 292 (emphasis added). The per curiam opinion in *AAA Fencing* does not state whether the lienor was an original contractor, i.e., whether he had a contract directly with the owner, in which event the statement is entirely consistent with LSI's position, or whether he was a subcontractor, in which case the statement is consistent with Early's position. It may be significant, however, that the language quoted above, for which no citation to authority was made, was preceded in the opinion by this statement, for which *Totorica v. Thomas*, 16 Utah 2d 175, 397 P.2d 984 (1965), was cited as authority: "The law is clear in this jurisdiction that a mechanics' lien foreclosure action must be brought within twelve months after the original contract between the lienor and the lienee is completed, or relief will not lie." *AAA Fencing*, 714 P.2d at 291.

In *Totorica v. Thomas*, the general contractor, Totorica, entered into a contract to build a residence. The last work was done in April 1962. Totorica recorded his lien on April 10, 1962, and filed his action to foreclose his mechanic's lien on March 28, 1963. 397 P.2d at 985. Thomas contended that Totorica did not timely file his action to foreclose the lien, because there was a work suspension of more than thirty days during the course of performance of the contract and more than twelve months had elapsed since that period before Totorica's action was commenced. *Id.* at 986. In rejecting that contention, the Court noted that the statute does not require the claimant to choose one alternative under the statute. Accordingly, the Court held that "a lien claimant may bring an action within 12 months after the completion of his contract, or, if he wishes, bring it within 12 months after there has been a suspension of work for a period of 30 days." *Id.* at 981–87. Thus, in *Totorica*, the Court clarified the alternatives under section 38–1–11 in the context of claims brought by the general contractor. Similarly, in *Mickelsen v. Craigco, Inc.*, 767 P.2d 561 (Utah 1989), the Court held that plaintiff commenced his action to foreclose his lien within the time set forth in section 38–1–11 because he brought the action within twelve months after completion of his contract. *Id.* at 563. As in *Totorica*, the lienor in *Mickelsen* had entered into a contract directly with the owner. Thus, his time began to run from completion of his contract.[2] Finally, in *Roberts v. Hansen*, 25 Utah 2d 190, 479 P.2d 345 (1971), also cited in *AAA Fencing*, the Court looked to section 38–1–2's definition of "original contractor" in construing the term "original contract" as used in section 38–1–11. *See* 479 P.2d at 346.

■ Therefore, under both the express language of the statute and the case law, "original contract," as used in section 38–1–11, refers to a contract with the owner, and an "original contractor," for purposes of section 38–1–2, is one who has such a contract. All other lien claimants are subcontractors. Applying the *Totorica* doctrine to this statutory framework, a sub-

---

**2.** More recently, in *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163 (Utah App.1990), this court addressed whether plaintiff's action to foreclose his mechanic's lien was timely under section 38–1–11. Because the action was not filed within twelve months of the completion of the contract between the owner and plaintiff, the court held that the lien was not timely filed. *Id.* at 173. The court took pains to note that plaintiff, a painting contractor, entered into a contract directly with the owner and was "not a subcontractor as is often the situation where painting work is performed." *Id.* at 172 n. 11.

contractor has the same choice as the "original contractor" under whom he serves and may commence an action to foreclose his lien within twelve months after completion of the "original contract," i.e., the contract between the original contractor and the owner, *or* within twelve months after there has been a suspension of work "thereunder," i.e., under the original contract, for a period of thirty days. A subcontractor's completion of his own work or the suspension of work under a subcontract, then, are not dates from which the untimeliness of a subcontractor's lien action are judged.[3] Untimeliness is evaluated with reference to the "original contract"—typically the contract between the owner and the general contractor—under which the subcontractor performs pursuant to his subcontract with the general contractor.[4]

Unlike in *Totorica, Mickelsen,* and *Copier Painting,* the plaintiff in this case did not contract directly with the owner. Thus, the twelve-month period did not begin to run until thirty days after Savage suspended work under its contract. Savage suspended work on November 7, 1989. LSI's action to intervene and foreclose its

lien was therefore timely filed on October 23, 1990.[5]

## LEGAL DESCRIPTION

LSI also claims the trial court erred in ruling that the legal description on the lien was insufficient. Utah Code Ann. § 38–1–7(2)(d) (Supp.1991) provides that the notice to hold and claim a lien shall contain "a description of the property, sufficient for identification." Descriptive terms in a lien notice serve to inform interested parties of the existence and scope of the lien. *Projects Unlimited,* 798 P.2d at 747. In evaluating the sufficiency of the property description, we examine

> whether interested parties have been informed of the existence of the lien and whether the lien has misled or prejudiced those parties. When lien notices have sufficiently informed interested persons that a lien exists on identifiable property and the complaining party has not been misled by the notice, the purpose of the provisions has not been thwarted and courts are inclined to find substantial compliance.

---

**3.** This interpretation is consistent with Utah Code Ann. § 38–1–7(1) (Supp.1991), concerning when a claimant's lien must be recorded, which speaks not in terms of when the particular claimant's work is finished but rather provides that any lien must be recorded "within 80 days after substantial completion of the *project* or *improvement....*" It would be anomalous to track the timeliness of *recordation* of a subcontractor's lien from completion of the project, while calculating his year in which to bring his *action* from the completion of *his own subcontract.* Indeed, under such a view, it might happen that the one-year period in which a subcontractor would be required to bring his action would expire before the start of the 80–day period in which the subcontractor would be entitled to record his lien.

**4.** Not only does this result serve the statutory preference recognized in note 5, *infra,* it also permits a subcontractor, without jeopardizing his lien rights, to take a "wait and see" attitude. Nor does it disrupt certain contractual arrangements.

On major projects of long duration, a subcontractor who completes his work early, such as an excavator, need not file his action within twelve months after the excavation work was

done, at which time interior plumbing or other work may still be in process. He can honor the general contractor's plea to wait just a little longer for payment, pending an anticipated construction loan disbursement or additional money brought in by a new investor, without foregoing the right to enforce his lien in due course if he remains unpaid. Similarly, a subcontractor who, by the terms of his subcontract, is not entitled to his final payment until the general contractor receives his final payment, is not required to needlessly sue on his lien in situations where there is more than a year between completion of the subcontract work and the general contractor's final payment.

**5.** Neither party has suggested that LSI's motion to intervene in the existing lien action should be treated differently than a complaint to commence its own action. Notwithstanding Rule 3 of the Utah Rules of Civil Procedure, which defines an action as being commenced by filing a complaint, it seems sensible for the instant purpose to treat LSI's motion for intervention as equivalent to the commencement of its own action, given the preference of the mechanics' lien statute for a single lien proceeding rather than a multitude of actions. *See* Utah Code Ann. § 38–1–8, –13, –14 (1988).

*Id.* In the absence of a claim that any party to this action has been prejudiced or misled by the description, we hold that the description was sufficient as to the parties before us. *Id.*

In *Projects Unlimited*, the Court held that a notice of lien containing an inaccurate metes and bounds description did not necessarily invalidate the lien notice for several reasons, including lack of a showing of prejudice. *Id.* at 750. In this case, LSI's lien described the property as 3941 South Parkview Drive (3915 East), Salt Lake City, Utah, and then characterized the parcel as "Lot 12 Olympus Park subdivision." The actual lot involved in this case was lot 112. However, Early identified the lot as lot 12 in a letter to "all suppliers and subcontractors" dated October 2, 1989. LSI notified Early of the lien by certified letter dated February 9, 1990. Further, the record contains no indication that Early was misled or prejudiced by the lien notice.

Therefore, we conclude that the property description contained in the lien notice sufficiently identified the property under section 38–1–7(2)(d).

## CONCLUSION

The trial court's denial of the motion to intervene is reversed and the case is remanded with instructions to permit the requested intervention and for such further proceedings as are appropriate.

GARFF, J., concurs.

JACKSON, J., dissents.